13 CIV 76

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| TANIA MONTES DE OCA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BLOOMBERG L.P.,<br><br>Defendant. | Civil Action No.<br><br>ECF CASE<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff Tania Montes De Oca ("Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys The Ottinger Firm, PC, alleges, upon personal knowledge and upon information and belief as to other matters, as follows:

### PRELIMINARY STATEMENT

1.      This is a case about a large financial data and information company which fails to pay Contracts Representatives in its Contract Department of Finance Administration, Contracts Group ("Contracts Group"), including Plaintiff, the wages to which they are entitled to by law.

2.      Defendant is Bloomberg LP ("Bloomberg" or "Defendant"), which describes itself as "the leader in global business and financial information, enabling customers to make smarter, faster, more informed business decisions."

3.      Plaintiff and the members of the proposed classes are or were employed in Bloomberg's Contracts Group as Contracts Representatives and regularly work or worked for a flat annual salary, regardless of the number of hours worked. Plaintiff and the members of the proposed classes often work or worked in excess of forty (40) hours per week but are or were not

paid time-and one-half overtime compensation. They also work or worked more than ten (10) hours per day and/or a split shift, but are or were not paid spread-of-hours pay. Plaintiffs and the members of the proposed classes meet the definition of employee under federal and state law, and are not subject to any applicable exemptions or exclusions under applicable law.

4.      By the conduct described in this Collective and Class Action Complaint (the "Complaint"), Defendant willfully violated federal and state wage and hour laws. Plaintiff seeks to recover unpaid overtime wages, spread-of-hours pay, attorneys' fees and costs, interest, and liquidated damages.

5.      Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), on behalf of herself and all similarly situated current and former employees of Bloomberg who elect to opt into this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b). She also brings this action on behalf of herself and a class of similarly situated current and former employees of Bloomberg, pursuant to Rule 23 of the Federal Rules of Civil Procedure under the New York Labor Law ("New York Labor Law" or "NYLL") Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") title 12, Part 142.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

10.    Bloomberg maintains an office at 731 Lexington Avenue, New York, New York and is subject to personal jurisdiction in New York.

11.    A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

### *Plaintiff*

12.    Plaintiff Tania Montes De Oca resides in Dix Hills, New York.

13.    Plaintiff was an employee of Bloomberg from October 4, 2010 until her termination on November 12, 2012.

14.    During her employment with Bloomberg, Plaintiff worked as a Contracts Representative in Bloomberg's Contracts Group.

15.    Plaintiff met the definition of employee under applicable law, and she was not subject to any applicable exemptions or exclusions under applicable law, including, but not limited to, those in an executive, administrative, or professional role.

16.    Plaintiff received a fixed annual salary regardless of the number of hours she worked.

17.    Plaintiff worked more than forty (40) hours during many workweeks.

18.    Defendant failed to pay Plaintiff at the premium overtime rate of time and one-half for all hours she worked over forty (40) in a given workweek.

19.    Defendant did not keep accurate records of hours worked by Plaintiff.

20.     Defendant did not pay Plaintiff spread-of-hours pay for shifts in excess of ten (10) hours.

21.     As evidenced by Exhibit A, Plaintiff hereby consents to sue under the FLSA, pursuant to 29 U.S.C. § 216(b).

***Defendant***

22.     Upon information and belief, Bloomberg is a Delaware Limited Partnership.

23.     Bloomberg maintains its principal place of business at 731 Lexington Avenue, New York, New York and regularly transacts business in this District.  Bloomberg describes itself as business "quickly and accurately delivering data, news and analytics through innovative technology."

24.     Upon information and belief, Bloomberg has the power to hire and fire employees, including Plaintiff, direct their work, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment. Upon information and belief, at all times relevant, Bloomberg had the power to stop the illegal pay practices described herein.

25.     Bloomberg is a covered employer and/or enterprise engaged in commerce or in the production of goods for commerce as applicable within the meaning of the FLSA and the NYLL and at all times relevant, employed Plaintiff and similarly situated employees and failed to pay them for all compensable hours worked.

## COLLECTIVE ACTION ALLEGATIONS

26.     Plaintiff brings FLSA claims on behalf of herself and other employees similarly situated, as authorized under 29 U.S.C. § 216(b).  The employees similarly situated are:

4

FLSA Class:        All persons in the United States who are or have been employed by Defendant as Contracts Representatives in the Contracts Group within Defendant's Contract Department of Finance Administration at any point for a period no less than the three year period prior to the filing of the Complaint.

27.     The FLSA Class Period runs from no less than the three years prior to this action's filing date through the date of the final disposition of this action (the "FLSA Class Period").

28.     The persons in the FLSA Class ("FLSA Class Members") meet the definition of employee under applicable law, and were not subject to any exemptions or exclusions under applicable law including, those in an executive, administrative, or professional role.

29.     Upon information and belief, at all times during the FLSA Class Period, Defendant authorized a misclassification of all of its Contracts Representatives in its Contracts Group, including Plaintiff, as FLSA exempt and have, as a matter of policy, denied them overtime premiums for hours worked in excess of forty (40) hours in a workweek.

30.     Defendant is liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiff. There are many similarly situated current and former Contracts Representatives in the Contracts Group who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed class:

NYLL Class:          All persons who are or have been employed by Defendant in the
                     State of New York as Contracts Representatives in the Contracts
                     Group within Defendant's Contract Department of Finance
                     Administration at any point for a period no less than the six years
                     prior to the filing of the Complaint.

32.     The NYLL Class Period is defined as a period no less than the six years prior to

the filing date of this lawsuit and the date of judgment in this action.

33.     The relevant Contracts Representatives meet the definition of employee under

federal and state law, and are not subject to any exemptions or exclusions under applicable law

including, those in executive, administrative, or professional roles.

34.     Upon information and belief, at all times during the NYLL Class Period,

Defendant as a matter of common practice or policy authorized a misclassification of all of its

Contracts Representatives in its Contracts Group, including Plaintiff, as exempt from the FLSA

and the NYLL and have, as a matter of policy, denied them overtime premiums for hours worked

in excess of forty (40) hours in a workweek, and spread-of-hours pay for days on which they

worked more than ten (10) hours and/or when there was a split shift.

35.     Numerosity: The persons in the NYLL Class ("NYLL Class Members") identified

above are so numerous that joinder of all members is impracticable.  Although the precise

number of such persons is not known to Plaintiff, the facts on which the calculation of that

number can be based are presently within the sole control of Defendant.  Plaintiff does know that

at the time of her termination, there were eight (8) remaining Contracts Representatives

employed in the Contracts Group.  In addition, the Contracts Representatives positions were

subject to a high rate of turnover since individuals often left these positions after working just

one or two years.   Plaintiff is aware of ten (10) Contracts Representatives who either voluntarily

left or were terminated from the Contracts Group during her two-year tenure.  Thus, upon

information and belief, Defendant employed over forty (40) people who satisfy the definition of the NYLL Class within the NYLL Class Period.

36.    Defendant has acted or refused to act on grounds generally applicable to the NYLL Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the NYLL Class as a whole.

37.    Commonality: There are questions of law and fact common to the NYLL Class that predominate over any questions solely affecting individual members of the NYLL Class, including but not limited to:

a.    whether Defendant has failed and/or refused to pay Plaintiff and the NYLL Class overtime pay for hours worked in excess of forty (40) hours per workweek within the meaning of the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Contracts Group of Labor Regulations, 12 N.Y.C.R.R. Part 142;

b.    whether Defendant failed to provide Plaintiff and the NYLL Class spread-of-hours compensation as required by NYLL Article 19, §§ 650 et seq., and the supporting New York State Contracts Group of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. § 142-2.4.

c.    whether Defendant failed to keep true and accurate time and pay records for all hours worked by their employees, and other records required by NYLL Article 19, §§ 650 et seq., and supporting regulations, including 12 N.Y.C.R.R. § 142-2.6;

d.    whether Defendant failed to furnish Plaintiff and the NYLL Class with an accurate statement of wages, hours worked, rates paid, and gross wages, as required by NYLL Article 19, §§ 650 et seq., and supporting regulations, including 12 N.Y.C.R.R. § 142-2.6;

7

e.      the nature and extent of NYLL Class-wide injury and the appropriate

measure of damages for the class; and

f.      whether Defendant's policy of failing to pay workers lawful compensation

was done willfully or with reckless disregard of the statute.

38.     Typicality:  The claims of the Plaintiff are typical of the claims of the NYLL

Class she seeks to represent.  Plaintiff and the NYLL Class work or have worked for Defendant

as Contracts Representatives within Bloomberg's Contracts Group and have not been paid

premium overtime wages for the hours that they have worked in excess of forty (40) hours per

workweek, and have not been paid spread-of-hours pay for days in which Plaintiff and the NYLL

Class worked more than ten (10) hours per day and/or when there was a split shift. Defendant has

acted and has refused to act on grounds generally applicable to the NYLL Class, thereby making

declaratory relief with respect to the NYLL Class appropriate.

39.     Adequacy:  Plaintiff will fairly and adequately represent and protect the interests

of the NYLL Class.

40.     Plaintiff has retained counsel competent and experienced in complex class action

and in labor and employment litigation.

41.     The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because

prosecution of actions by or against individual members of the class would result in inconsistent

or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

Further, adjudication of each individual member's claim as a separate action would be

dispositive of the interest of other individuals not party to this action, impeding their ability to

protect their interests.

42.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the proposed NYLL Class predominate over any questions affecting only individual members of the proposed NYLL Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the proposed NYLL Class the wages to which they are entitled.  The damages suffered by the individual proposed NYLL Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FACTUAL ALLEGATIONS

**Contracts Representatives in Bloomberg's Contracts Group Regularly Work Hours In Excess Of Forty (40) In A Workweek Or Ten (10) Hours In A Single Day And Receive No Overtime Compensation Or Spread-Of-Hours Pay**

43.     Bloomberg employs as few as five (5) and as many as ten (10) Contracts Representatives in its Contracts Group, a number that varied throughout Plaintiff's employment.

44.     Upon information and belief, Contracts Representatives in the Contracts Group are subject to a common practice or policy in which they receive a flat annual salary, regardless of the number of hours they work.

45.     Upon information and belief, Contracts Representatives in the Contracts Group are subject to a common practice or policy in which they are misclassified as exempt from the FLSA and NYLL, and have as a matter of policy been denied overtime premiums for hours worked in excess of (forty) 40 hours in a workweek.

46.     Contracts Representatives in the Contracts Group are subject to a common practice or policy in which they are misclassified as exempt from the NYLL and, despite often

working more than ten (10) hours a day, as a matter of common practice or policy have never received spread-of-hours pay.

47.    Bloomberg is aware of the additional hours worked in excess of forty (40) in a workweek or ten (10) hours in a single day, but as a matter of common practice or policy willfully misclassified Contracts Representatives as exempt from the FLSA and NYLL.

**Tasks In Which Contracts Representatives In The Contracts Group Engage: Data Entry, Clerical and Filing Tasks, and Customer Service Via Computer and Telephone**

48.    Contracts Representatives in the Contracts Group engage in a multitude of tasks including data entry-oriented duties, clerical and filing duties, responding to customer issues through Bloomberg's computer-based Contracts Request Desk ("CDSK") ticket system, and answering customer service calls  and internal queries  via Call Monitor or the Automatic Call Distribution ("ACD") telephone system.

49.    Each of the tasks in which Contracts Representatives in the Contracts Group engage does not involve the exercise of discretion and independent judgment with respect to matters of significance.

50.    The type and proportion of tasks in which Contracts Representatives engage is scheduled each day by the supervisors (termed "Team Leaders") for the Contracts Representatives in the Contracts Group.  To that end, Contracts Representatives receive a spreadsheet each day from their assigned Team Leader reflecting in which tasks the Contracts Representative should engage during each hour of their work day.  Contracts Representatives' responsibilities primarily break down into the following categories: Sales Order Request queue (SOR queue), CDSK tickets, Indexing, DR4 Report, and the Gauss internal filing system.  In addition, throughout the day, Contracts Representatives also respond to customer telephone calls via the ACD telephone system.

**SOR Queue And Related Data Entry Tasks**

51.     Contracts Representatives spend part of their day responding to issues generated in the SOR queue, a computer program containing newly completed-contracts (usually from Bloomberg's Sales Department).

52.     Contracts Representatives engage in data entry tasks to update the information in Bloomberg's records regarding the types of Bloomberg data and information products to which customers subscribe.  Specifically, the SOR queue generates different types of requests for Contracts Representatives to address and examples of the most high volume types of requests are:  (i) **New orders** for existing accounts or entirely new accounts which require Contracts Representatives to follow established guidelines to transmit only those agreements Bloomberg procedures specifically indentify based on the type services requested;  (ii) **Accounts Only** for potential clients in which a shell account without any specific order in place is created to simply confirm that the firm name and contact information is complete; (iii) **Removals** in which a client would like to remove a user from their subscription agreement, and provide revisions to update billing, suite number, and/or contact information; (iv) **Contract Swaps** to switch users on an account; (v) **Relocations** in which a client is moving existing Bloomberg terminals to another location either within or outside the United States; and (vi) **Updates** in which revised contact names, e-mail addresses, and telephone numbers are made to an account.  In all instances, each and every one of these tasks is completed in accordance with a standard form or procedure and does not involve the exercise of discretion or independent judgment on the part of the Contracts Representative.

53.     In connection with the SOR queue, Contracts Representatives also identify any discrepancies they might find between a client name entered on the SOR queue and the name

already in Bloomberg's existing customer records.  Contracts Representatives were not allowed

to and had no discretion to make any changes unless the SOR queue so specified.  For example,

if a Sales Representative or any other internal Bloomberg representative entered any updates or

new order information incorrectly, such as a missing company "LLP" suffix , Contracts

Representatives need to follow-up with the Bloomberg representative who created the item in the

SOR queue since Contracts Representatives cannot proceed without a new, corrected item in the

SOR queue.  The most Contracts Representatives can do is call the client directly and confirm

the full legal name for the order at issue, but Contracts Representatives cannot independently

make a name change.  In addition, Contracts Representatives make sure customers sign the

contracts and that no text on the contracts has been struck out or altered by the customer.   If text

on the contracts is changed by a customer, the matter is referred to the Negotiations Group

within the Contract Department of Finance Administration.

54.    Contracts Representatives do not select the type of agreement to send to a

customer nor can they change any terms of the contracts.

55.    In connection with the SOR queue, Contracts Representatives, as necessary, also

contact clients to provide them with access to accept agreements electronically through an

automated link sent to the client after processing  a new order.  In addition, Contracts

Representatives may also guide a client through Bloomberg's Customer Service Center website

where clients can, among other things,  accept contracts electronically, place orders , and view

billing from Bloomberg's Accounting Department.

**CDSK Tickets**

56.    Another major task to which a portion of Contracts Representatives' days are

scheduled by their Team Leader involves responding to CDSK tickets either created internally

by another Bloomberg department or externally by customer requests. CDSK tickets are generally assigned to the Contracts Representatives in the Contracts Group  either via a computer program or through manual assignment to a specific Contracts Representative in connection with various customer service issues to which a response is required within a mandatory, fixed period of time. The CDSK tickets address a number of customer issues, including but not limited to, password access issues, accessing a contract for execution, unsigned or incomplete contracts requiring follow-up, extension of a client's free trial period, or client name changes. Sometimes Contracts Representatives need to refer the CDSK ticket to another part of the Contract Department of Finance Administration or to a completely separate department within Bloomberg such as the Accounting or Sales Departments.

57.     To further guide Contracts Representatives, Bloomberg provides a CDSK Quality Check List for the many categories of CDSK tickets. The CDSK Quality Check List establishes fixed time periods in which to accomplish and follow-up upon certain tasks and lists a series of tasks to be completed in connection with the different types of CDSK tickets.

58.     Contracts Representatives  generally need to  review CDSK tickets during the two-hour period scheduled by Team Leaders with varying timeframes for follow-up and completion depending on the CDSK ticket type.

**Indexing**

59.     Contracts Representatives also review all incoming contracts received via the facsimile system both to make sure the contract is signed on the signature box and includes all pages, as well as to identify any customer strike-outs or changes. If the contract is complete, Contracts Representatives file the signed contract in the computer system and update the computer system to reflect that receipt of the signed contract. If the customer struck or changed

text, the Contracts Representative generates a CDSK ticket for follow-up.  Contracts Representatives would reach out to the client [to have contracts re-faxed due to missing pages or an unclear signature.  Alternatively, if the customer changed language on an agreement,  then the Contracts Representative  would create a CDSK ticket for Contracts Representatives in the Negotiations Team to reach out to the customer for further resolution.

**Gauss Internal Filing System**

60.    A task related to the Indexing performed by Contracts Representatives is the Gauss internal filing system.  This system is specifically for manually signed contracts.   After the Indexing tasks are completed with a contract received via facsimile, the contract is assigned the correct order number and entered into the Gauss internal filing system.  Contracts Representatives paste an authorized signatory stamp on the Bloomberg signature box and email a copy of countersigned agreements to client.

**DR4 Report**

61.    Contracts Representatives also run what is termed a DR4 Report every few minutes during the period of the day Team Leaders  schedule for DR4 Reports to verify the reason  contracts are on hold and are not proceeding.  For example, Contracts Representatives investigate an  order listed on the DR4 Report by either contacting the Sales Representative and/or  creator of the order and also identify whether further action is required by another Bloomberg department.

62.    The action taken by Contracts Representatives in connection with the DR4 Report is often limited to  entering a note on the order identifying the  corresponding CDSK ticket number.

**ACD Telephone System**

63.     In addition to working on all of the above-referenced matters for which Contracts Representatives' time was specifically scheduled, Contracts Representatives simultaneously answer external and internal customer service- related telephone calls and identify the correct Bloomberg department to address the call.  For example, Contracts Representatives address questions in connection with the mechanics of the execution of contracts, and they forward calls to the Sales Department when dealing with pricing or renewal of Bloomberg data and information products.

64.     To the extent Contracts Representatives are not busy in connection with their scheduled task for a specific time frame or responding to the ACD telephone system, Contracts Representatives draw work from the busy SOR queue.  There is overlap among Contracts Representatives' tasks, too, because the SOR queue and Indexing often require the creation of CDSK tickets for follow-up tasks.   For example, from the SOR queue, a new client might need to be given electronic access to their contract for acceptance.  As another example, in Indexing, when reviewing contracts received via facsimile, clients often omit a page from facsimiles or alter some text, both of which require follow-up.

**Contracts Group Is Perpetually Understaffed And Overwhelmed With Work, So Contracts Representatives Work Long Hours**

65.     Most of the tasks in which Contracts Representatives engage are subject to review or completion within a designated time frame for processing and often have a mandatory, fixed time for follow-up under the CDSK Quality Check List.

66.     As a general matter, Contracts Representatives in the Contracts Group are assigned to and scheduled for one of four (4) shifts within the 13-hour period from 7:00 a.m. to 8:00 p.m.   At times, there are ten (10) Contracts Representatives employed in the Contracts

Group's New York office and sometimes as few as five (5) due to turnover.  In addition, one Contracts Representative works from Washington, D.C.

67.    At all times, Contracts Representatives' duties in connection with the SOR queue, CDSK tickets, Indexing, Gauss filing system, and DR4 Reports combined with a constant influx of call from the ACD  telephone system, make it difficult, if not impossible, for Contracts Representatives to complete their work without working more than forty (40) hours per week.

68.    Given the volume of tasks and mandatory, fixed time frames for completion of tasks, as well as pressure from Team Leaders to respond to and resolve CDSK tickets, Contracts Representatives are overwhelmed with work and regularly come in 1-2 hours early or stay 1-2 hours late and work through their lunch breaks to work on resolution of and response to CDSK tickets.  In fact, a week in which Contracts Representatives worked just forty (40) hours would be the exception

69.    Due to, among other reasons, turnover, illness, or vacation, the Contracts Group is often understaffed, and this only intensifies the need to work more than forty (40) hours per week.

70.    Bloomberg is aware Contracts Representatives work more than forty (40) hours in a workweek as well as more than ten (10) hours on many workdays, but Bloomberg never pays overtime or spread-of-hours pay, and, despite being perpetually understaffed, the workload for the Contracts Representatives in the Contracts Group does not change.

## FIRST CAUSE OF ACTION
### (Fair Labor Standards Act – Overtime Pay Violation)
### (Brought on Behalf of Plaintiff and the FLSA Class Members)

71.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

72.     Defendant has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

73.     Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

74.     At all relevant times, Plaintiff and the FLSA Class Members were engaged in commerce and/or the production of goods for commerce or were employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203, 206(a) and 207(a).

75.     The federal overtime pay provisions set forth in §§ 201 *et seq.,* of the FLSA apply to Defendant.

76.     At all relevant times, Plaintiff and the FLSA Class Members met the definition of an employee within the meaning of 29 U.S.C. §§ 203(e) and 207(a) and were not subject to any applicable exemptions or exclusions.

77.     At all times relevant, Defendant has been an employer engaged in commerce and/or the production or sale of goods for commerce or in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(d),  206(a), and 207(a).

78.     At all relevant times, Defendant knowingly failed to pay Plaintiff and the FLSA Class Members overtime pay to which they were entitled under the FLSA.

79.     Defendant failed to keep accurate records of the hours that Plaintiff and the FLSA Class Members worked.

80.     Defendant's violations of the FLSA, as described in this Complaint, have been willful and intentional. Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and the FLSA Class Members.

81.     Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

82.     As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Class Members have suffered damages by being denied the overtime wages and other wages to which they were entitled under the FLSA in accordance with 29 U.S.C. §§ 201 *et seq.*

**83.**     As a result of the Defendant's unlawful acts, Plaintiff and the FLSA Class Members have been deprived of the overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §216(b).

**SECOND CAUSE OF ACTION**
**(Fair Labor Standards Act- Recordkeeping Violations)**
**(Brought on Behalf of Plaintiff and Similarly**
**Situated Current and Former Employees)**

84.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

85.     Defendant failed to make, keep, and preserve accurate records with respect to Plaintiff and the FLSA Class Members as required by the FLSA, including hours worked each workday and total hours worked each workweek, as required under 29 U.S.C. § 211(c) and supporting federal regulations.

86.    Defendant's failure to make, keep, and preserve accurate records was willful.

## THIRD CAUSE OF ACTION
### (New York Labor Law: Unpaid Overtime Wages)
### (Brought on Behalf of Plaintiff and the NYLL Class Members)

87.    Plaintiff realleges and incorporated by reference all allegations in all preceding paragraphs.

88.    At all relevant times, Plaintiff and the NYLL Class Members were employees since they were not subject to any applicable exemptions or exclusions and Defendant has been an employer within the meaning of the New York Labor Law.

89.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant under the NYLL Article 19, §§ 650 *et seq.,* and the supporting N.Y.C.R.R., including, but not limited to, tit. 12, Part 142-2 *et seq.*

90.    Defendant failed to pay Plaintiff and the NYLL Class Members the overtime wages to which they were eligible and entitled under the New York Labor Law.

91.    By Defendant's failure to pay Plaintiff and the NYLL Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, *§§* 650 *et seq.,* and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 142-2 *et seq.*

92.    Due to Defendant's violations of the New York Labor Law, Plaintiff and the NYLL Class Members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### (New York Labor Law- Spread-of-Hours  Pay)
### (Brought on Behalf of Plaintiff and the NYLL Class Members)

93.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

94.     Consistent with their policy and pattern or practice, Defendant has willfully failed to pay Plaintiff and the NYLL Class Members additional compensation to which they were eligible and entitled of one hour's pay at the basic minimum hourly wage rate for each day during which they worked more than ten (10) hours and/or there was a split shift.

95.     By Defendant's failure to pay Plaintiff and the NYLL Class Members spread-of-hours pay, Defendant has willfully violated the NYLL Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. § 142-4 *et seq.*

96.     Due to Defendant's violations of the New York Labor Law, Plaintiff and the NYLL Class Members are entitled to recover from Defendant their unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### (New York Labor Law- Record Keeping Violations)
### (Brought on Behalf of Plaintiff and the NYLL Class Members)

97.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

98.     Defendant failed to make, keep, and preserve accurate records with respect to Plaintiffs and the NYLL Class Members, including hours worked each workday and total hours

worked each workweek, as required by NYLL Article 19, §§ 650 *et seq.,* and supporting

regulations, including, but not limited to, 12 N.Y.C.R.R § 142-6 *et seq.*

99.     Defendant failed to furnish Plaintiffs and the NYLL Class Members a statement

with every payment of wages listing hours worked, rates paid and gross wages in violation of the

NYLL and supporting New York State Department of Labor Regulations including, but not

limited to, 12 N.Y.C.R.R. § 142-6 *et seq.*

100.    Defendant's failure to make, keep, and preserve accurate records was willful.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all other similarly situated

persons, prays for the following relief:

A.     At the earliest possible time, Plaintiff should be allowed to give notice of this

collective action, or that the Court issue such notice, to all persons who are presently, or have

at any time during no less than the three years immediately preceding the filing of this suit,

up through and including the date of this Court's issuance of court-supervised notice, been

employed by Defendant as Contracts Representatives in its Contracts Group. Such notice

shall inform them that this civil action has been filed, of the nature of the action, and of their

right to join this lawsuit if they believe they were denied proper wages;

B.     An award of unpaid overtime pay for which they are eligible along with  an

additional and equal amount as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq.,* and

the supporting United States Department of Labor regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure;

D.      Designation of Plaintiff as a representative of the NYLL Class, and counsel of record as Class Counsel;

E.      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

F.      An award of unpaid overtime pay and liquidated damages pursuant to NYLL Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

G.      Unpaid spread-of-hours pay and liquidated damages, pursuant to NYLL Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

H.      Pre-judgment interest;

I.      An injunction requiring Defendant to pay all statutorily-required wages pursuant to the New York Labor Law;

J.      Attorneys' fees and costs; and

K.      Such other and further relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury on all questions of fact raised by the Complaint.

Dated: January 3, 2013

Respectfully submitted,

**THE OTTINGER FIRM, P.C.**

By: _____

Gregory N. Filosa (GF-5680)
Robert Ottinger (RO-8879)
20 West 55th Street, 6th Floor
New York, New York 10019
Telephone: (212) 571-2000
Fax: (212) 571-0505
greg@ottingerlaw.com
Robert@ottingerlaw.com

*ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASSES*

## CONSENT TO BE PARTY PLAINTIFF

I consent to be a party plaintiff in the foregoing lawsuit against Bloomberg L.P. in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b). I understand that by filing this Notice of Consent, I will be bound by the judgment of the Court on all issues in this case, whether favorable to me or not. I hereby designate The Ottinger Firm, P.C. to represent me in this suit.

_Tania Montes De Oca_
Signature

_TANIA Montes De OCA_
Print name

_JAnuary 3, 2013_
Date

_Dix Hills NY 11746_
City, State, and Zip Code